1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9         SOUTHERN DISTRICT OF CALIFORNIA
10
11  BOARD OF TRUSTEES OF THE SAN          Case No.:  19-cv-1500-GPC-AHG
    DIEGO ELECTRICAL PENSION
12  TRUST, et al.,                        **ORDER GRANTING IN PART AND**
                                          **DENYING IN PART PLAINTIFFS'**
13                        Plaintiffs,     **MOTION FOR SUMMARY**
                                          **JUDGMENT**
14  v.
                                          **[ECF No. 24]**
15  MY ELECTRICIAN, INC., a California
16  Corporation,
17                        Defendant.
18
19          Before this Court is Plaintiffs' Motion for Summary Judgment ("MSJ"), ECF No.
20  24.  Defendant filed a Response, ECF No. 27, and Plaintiffs filed a Reply, ECF No. 29.
21  For reasons discussed below, the Court **GRANTS IN PART and DENIES IN PART**
22  Plaintiffs' Motion.  Specifically, the Court finds Defendant liable under the Employee
23  Retirement Income Security Act of 1974 ("ERISA"), and thus Plaintiffs are summarily
24  entitled to $16,192.25 in damages and $4,822.44 in litigation costs.  However, Plaintiffs
25  have failed to meet their burden of proof in demonstrating that the suggested $22,705.00
26  in attorney's fees is reasonable.
27
28

                                          1

I.   **BACKGROUND**

   A.   **The Trust Funds and Their Relationship with Defendant**

   The "Trust Funds" consist of the San Diego Electrical Pension Trust ("Pension Trust") and the San Diego Electrical Health & Welfare Trust ("H&W Trust").  *See* Def.'s Separate Statement Opp'n Pls.' Undisputed Material Facts ("UF") No. 4, ECF No. 28.

   The Trust Funds obtain fringe benefit contributions.  These contributions come from two different sources: (1) employers who sign collective bargaining agreements with the International Brotherhood of Electrical Workers, Local 569 ("Local 569"); and (2) employers who are obligated to make contributions pursuant to non-bargaining project agreements.  *Id.* UF No. 6.  Defendant's relationship with the Trust Funds stems from the second category.  Defendant entered into a Letter of Assent to be bound by the San Diego Unified School District Project Stabilization Agreement Construction and Major Rehabilitation Funded by Proposition S ("PSA").  *Id.* UF No. 18.

   The PSA incorporates by reference certain parts of Local 569's collective bargaining agreements, including the Inside Agreement 2015-2020 International Brotherhood of Electrical Workers AFL-CIO Covering San Diego and Imperial Counties California ("Inside Agreement").  *Id.* UF Nos. 19, 20.  This Inside Agreement incorporates the Agreements in the Trust Funds, specifically the Agreement for the Pension Trust and the Agreement for the H&W Trust (the two Agreements collectively referred to as the "Trust Agreements").  *See id.* UF Nos. 4, 21.

   B.   **The Terms of the Agreements**

   By the PSA incorporating the Inside Agreement—which in turn incorporates the Trust Agreements—Defendant had certain obligations to the Trust Funds, such as making fringe benefit contributions to the Trust Funds.  At issue is the precise extent of these obligations.  Below, the Court first outlines the big picture of the obligations and the resultant penalties from the failure to comply with the obligations.

### 1.   Obligations

Employers contributing to the Trust Funds receive Contribution Report Forms to self-report the hours worked by their employees for the month.  Each month, the employer must complete the Contribution Report Form with all hours worked by its employees, and submit the Form along with the resultant monthly contribution payments. *See id.* UF Nos. 7, 8.  Specifically, the Inside Agreement requires the employer to self-report monthly fringe benefit contributions to the Trust Funds based on the hours worked by the employees for "on-site construction work of the type covered by this Agreement." *See id.* UF No. 22; *see also* Decl. Andy Berg Ex. F at 7–8, ECF No. 24-1 (Article II, Section 2.06(a) of the Inside Agreement).

To ensure that the contributing employers properly pay all necessary contributions, the Trust Funds conduct audits of the employers' payroll records through an independent audit firm.  UF No. 11, ECF No. 28.  The terms of the Trust Agreements require the contributing employers to comply with the audit requests by the Trust Funds.  *Id.* UF No. 12; *see also* Decl. Andy Berg Ex. A at 34, ECF No. 24-1 (Article X, Section 5 of the H&W Trust Agreement).

### 2.   Penalties

The Trust Agreements authorize the trustees of the Trust Funds to adopt collection and audit procedures.  Accordingly, the trustees of the Trust Funds have adopted the Audit Policy and Procedures, and the Collection Policy and Procedures.  *Id.* UF Nos. 5, 13.  Under the Audit Policy and Procedures, if the audit determines that there are contribution deficiencies amounting to $1,000 or greater, the contributing employers shall be billed for the audit fees.  *Id.* UF No. 13; *see also* Decl. Andy Berg Ex. D at 11, ECF No. 24-1 (Section IX.(C)).

If the audit discloses any underreporting by the employer, the employer shall be chargeable for the underreported amount and any delinquency charges.  UF No. 24, ECF

19-cv-1500-GPC-AHG

No. 28.  Pertaining to the employer's potential monetary charges, the Collection Policy and Procedures discuss the collection of: (1) delinquent contributions; (2) the assessment of liquidated damages and interests; and (3) the recovery of attorney's fees and audit fees. *Id.* UF No. 5.

Liquidated damages are assessed at the greater of $150 or 10% of the monthly contribution delinquency or any unpaid portion thereof, not to exceed $750 per month.[1] And if the Trust Funds file a lawsuit, liquidated damages are assessed at the greater of $150 or 20% of the delinquency, with no maximum.  *Id.* UF No. 9; *see also* Decl. Andy Berg Ex. C, ECF No. 24-1 (Section II.(E) of the Collection Policy and Procedures).

Unpaid contributions incur interest at the annual rate of ten percent (10%) per annum, starting from the delinquency date until the date the payment is received.  UF No. 10, ECF No. 28; *see also* Decl. Andy Berg Ex. C, ECF No. 24-1 (Section II.(F) of the Collection Policy and Procedures).

Finally, Section VIII of the Collection Policy and Procedures discusses attorney's fees: "Whenever attorney's fees are incurred as a result of a Contributing Employer's failure to pay contributions, interest, or liquidated damages, such Contributing Employer shall be held liable for any attorney's fees and costs and audit fees incurred."  Decl. Andy Berg Ex. C, ECF No. 24-1.

### C.    The Audit Over Defendant's Reports and the Alleged Deficiencies

Defendant submitted its Contribution Report Forms and the related contribution payments for the covered work under the PSA, specifically for the months of July 2017 through May 2018.  UF No. 25, ECF No. 28.  Defendant reported a total of four (4) hours

---

[1] While UF No. 9 states "any paid portion therefore," ECF No. 28, the underlying document supporting the UF indicates that "any unpaid portion thereof" is correct.  Decl. Andy Berg Ex. C, ECF No. 24-1 (discussing how liquidated damages shall be assessed of the monthly delinquent contribution "or any unpaid portion thereof").

1    of covered work, attributed to Mr. Brian Alston as an "Inside Wireman," *id.*, a job

2    generally considered as requiring the reporting of hours under the Inside Agreement, *id.*

3    UF Nos. 22, 26, 41.  Mr. Alston, a certified journeyman electrician, owns the Defendant

4    corporation.  He is also Defendant corporation's Responsible Managing Officer, CEO,

5    and President.  *Id.* UF No. 16.

6         In September 2018,[2] the Trust Funds referred Defendant to Alsweet Associates

7    ("Alsweet") for an audit of Defendant's payroll records.  Initially the audit was over the

8    period October 2017 through December 2017.  The audit later expanded to July 2017

9    through May 2018.  *Id.* UF No. 29.

10        As declared by the main auditor involved in this dispute, Alsweet's standard

11   procedure for auditing project agreements such as the PSA is to review the employer's

12   certified payroll records that were submitted to the California Labor Commissioner and

13   the California Department of Industrial Relations.  *Id.* UF No. 32.  At first, complications

14   existed in obtaining Defendant's certified payroll records, and the parties dispute the

15   cause of the complications.  *See id.* UF Nos. 35, 36.  In August 2019, Plaintiffs filed their

16   Complaint.  ECF No. 1.  Subsequently, Defendant provided the certified payroll records,

17   and Alsweet reviewed the records as part of the audit.  *See* UF Nos. 37–39, ECF No. 28.

18        Alsweet determined that while Defendant properly reported its employees' hours

19   to the Trust Funds, Defendant under-reported the hours for Mr. Alston.  *Id.* UF No. 40.

20   According to Alsweet, Defendant should have reported the hours Mr. Alston worked

21   under the PSA, especially since Mr. Alston classified himself in the payroll records as an

22   "Inside Wireman."  *Id.* UF No. 41.

23

24   _____

25   [2] While UF No. 29 states the referral occurred in "September 2019," ECF No. 28, the
26   underlying document supporting the UF indicates that the correct date was September
27   2018.  Decl. Zachary Gelbart ¶ 6, ECF No. 24-5.

28

1    Defendant challenges the above conclusion.  According to Defendant, no

2  obligation existed for Mr. Alston to report his hours under the PSA at all since all of his

3  work was non-manual and supervisory in nature.  In fact, Defendant averred that Mr.

4  Alston's self-classification of "Inside Wireman" on the payroll records was a mistake.

5  *Id.* UF No. 43.

6    On December 4, 2020, Plaintiffs moved for summary judgment.  MSJ, ECF No.

7  24.  On December 31, 2020, Defendant filed its Response,[3] and on January 13, 2021,

8  Plaintiffs filed their Reply.  ECF Nos. 27, 29.  Plaintiffs ultimately argue that they are

9  entitled to $43,719.69.  Part of the entitlement is $22,705.00 in attorney's fees.  MSJ

10  Mem. 25, ECF No. 24.  Defendant does not dispute the calculations reached that are

11  based on Plaintiffs' theory of liability.  Instead, Defendant primarily challenges the

12  underlying theory of liability, i.e. the nature of the work performed by Mr. Alston.  *See*

13  Resp. 9, ECF No. 27.  In addition, Defendant argues that the attorney's fees, amounting

14  to "nearly 343% of the under-reported contributions," are unreasonable.  *Id.* at 14.

15  **II.   LEGAL STANDARD**

16    Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) "if

17  the pleadings, depositions, answers to interrogatories, and admissions on file, together

18  with the affidavits, if any, show that there is no genuine issue as to any material fact and

19  that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v.*

20  *Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when it "might affect the outcome

21  of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

22  / / /

23

24  _____

25  [3] The Court declines to grant Defendant's Request for Judicial Notice, ECF No. 27-1,

26  since the Court did not need to rely on the underlying documents.  *See* Fed. R. Evid. 1002

27  (discussing the Best Evidence Rule).

28

The initial burden of establishing the absence of any genuine issues of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The movant can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id.* at 322–23. In such cases, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Once the moving party has satisfied its initial burden, the non-moving party cannot rest on the mere allegations or denials of its pleading. The non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The non-moving party may meet this requirement by presenting evidence from which a reasonable jury could find in its favor, viewing the record as a whole, in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221–22 (9th Cir. 1995). In determining whether there are any genuine issues of material fact, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001) (citation omitted).

## III.   DISCUSSION

The parties agree on most of the issues. First, all parties agree that ERISA applies to this dispute, since within the meaning of ERISA, the Trust Funds are "employee benefit plans" and "multi-employer plans," and Defendant is an "employer." *See* UF Nos. 1, 14, ECF No. 28. The Court agrees too. *See* 29 U.S.C. § 1002(3), (5), (37)(A). Further, the parties agree that ERISA presents a statutory duty to make all required

contribution payments, MSJ Mem. 11, ECF No. 24; Resp. 10, ECF No. 27:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Finally, as discussed *supra* Section I.B, the parties agree that Defendant must adhere to the terms of the Trust Agreements, which list Defendant's obligations and potential monetary penalties if Defendant failed to comply. One of those obligations is that on-site work, such as working with tools in the capacity as an "inside wireman" and in contrast to a non-manual supervisory position, is "covered" work and therefore must be reported to the Trust Funds. *See* Resp. 8, 10, 12–13, ECF No. 27.

There are three core disagreements in this case: (1) whether Defendant "under-reported" Mr. Alston's hours; (2) the circumstances behind the auditor's inability to initially review the records; and (3) the reasonableness of Plaintiffs' requested attorney's fees. Upon addressing each, the Court concludes that Plaintiffs are entitled to damages resulting from Defendant under-reporting 496.5 hours, which amount to $16,192.25. Further, the Court concludes that Plaintiffs are entitled to the litigation costs amounting to $4,822.44, as such costs were required to prosecute the case. However, the Court sides with Defendant that Plaintiffs failed to meet their burden justifying $22,705.00 in attorney's fees.

## A.     "Under-Reporting" Mr. Alston's Work and the Burden of Proof

The first dispute concerns whether Mr. Alston under-reported his hours when Defendant claims those hours were not included because they were non-manual supervisory work. Pursuant to the shifting burden of proof established under ERISA and for summary judgment, Defendant must provide a credible record to demonstrate that under-reporting has not occurred. Since Defendant failed to meet this burden, Plaintiffs

1    are entitled to damages relating to the under-reported hours by Defendant.

2           The Ninth Circuit has adopted a burden-shifting framework for ERISA disputes

3    over the records of the employee's working hours.  *Brick Masons Pension Tr. v. Indus.*

4    *Fence & Supply, Inc.*, 839 F.2d 1333, 1337–39 (9th Cir. 1988); *see also Estate of Barton*

5    *v. ADT Sec. Servs. Pension Plan*, 820 F.3d 1060, 1068 (9th Cir. 2016) (citing *Brick*

6    *Masons*, 839 F.2d at 1337–39).  The burden-shifting framework stems from ERISA's

7    requirement under 29 U.S.C. § 1059(a)(1) for employers to keep records sufficient to

8    determine the benefits due.  *Brick Masons*, 839 F.2d at 1338.

9           And under this framework, once Plaintiffs prove the fact of damages and

10   Defendant's failure to keep adequate records, the burden shifts to Defendant to present

11   evidence of the extent of covered work performed by its employees.  *Id.* at 1338–39; *cf.*

12   *Motion Picture Indus. Pension & Health Plans v. N.T. Audio Visual Supply, Inc.*, 259

13   F.3d 1063, 1066 (9th Cir. 2001) (applying the *Brick Masons* standard: "once [Plaintiffs]

14   show 1) that [Defendant] failed to keep adequate records, and 2) that there exist some

15   employees who (a) performed covered work that was (b) unreported to the trust funds,

16   then the burden shifts to [Defendant] to show the extent of the unreported covered work

17   for those employees").

18          Here, Plaintiffs have met the initial burden.  Plaintiffs have presented a Declaration

19   from the lead auditor in the instant audit.[4]  Decl. Zachary Gelbart, ECF No. 24-5.  The

20   auditor has articulated: his credentials, his methodology, his basis for relying on the

---

[4] Defendant initially presents a two-sentence assertion possibly challenging the credibility
of the auditor.  Resp. 7, ECF No. 27 ("The Auditor is not a third party mediator let alone
an administrative body.  The Auditor works on behalf of the Trust Funds.").  But
Defendant fails to provide any further explanation or evidence demonstrating the
auditor's bias or partiality.  In fact, Defendant concurs with the auditor's competence.
*See id.* at 11.  Absent more, the Court declines to disclaim the auditor's declaration.

certified payroll records over other record documents, the information that these records provide (including the type of work of the individual), the alleged discrepancy in the reported hours, and the damages calculations resulting from the under-reporting. *See, e.g.*, *id.* ¶¶ 1–5, 17–21, 27, 29.

Defendant's response to ERISA's burden-shifting framework and Plaintiffs' demonstration of the initial burden is that the certified payroll records, daily reports, timecards, and contribution records prove that adequate records exist, and that the auditor disregarded the documents other than the certified payroll records. Resp. 11, ECF No. 27. Yet Defendant has not provided any evidentiary support for its response, such as why these other records are adequate or more persuasive than the certified payroll records. Defendant's brief merely asserts so. Not only does this fail to meet the burden of persuasion under *Brick Masons*, it fails to meet the evidentiary standard for Defendant to survive summary judgment. *Cf. Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012) ("'[C]onclusory, self-serving affidavit[s], lacking detailed facts and any supporting evidence,' are insufficient to create a genuine issue of material fact." (alterations in original) (quoting *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997)).

In fact, Defendant's own descriptions and recollections of these documentations prove the auditor's (and by extension, Plaintiffs') point: the certified payroll records are far more reliable because these forms are submitted to the government, signed by the submitting employer under penalty of perjury as to their accuracy. Decl. Zachary Gelbart ¶ 4, ECF No. 24-5. In contrast, the other submitted documents are:

1.   Missing particular periods of time, *see* Decl. Tino X. Do Ex. J (Dep. Brian M. Alston) at 46:15–20, ECF No. 24-4; Resp. 12, ECF No. 27 ("My Electrician has acknowledged that it cannot locate all Daily Reports, it is only missing a few.");

2.      Subject to the supervisor's discretion as to the contents, *see* Decl.
        Tino X. Do Ex. J (Dep. Brian M. Alston) at 55:13–23, ECF No. 24-4
        ("There's some days where I'll show up in the morning and I'll leave.
        However, I'll still write my name down for that project because I want
        my time allotted to that particular project."); *see also id.* at 63:3–64:8;

3.      Inconsistent and conflicting with each other due to Mr. Alston's
        position in the Defendant corporation, *see id.* at 61:3–12 (discussing
        how the time stated in the daily reports for Mr. Alston will vary from
        the separate time cards); *see also id.* at 64:9–14 ("I [Mr. Alston] don't
        believe the daily reports apply to me because they're not an accurate
        assessment of what I do during the day."); and

4.      Of questionable accuracy and completeness, *see, e.g.*, *id.* at 58:8–15
        ("I could have been [at the Morse project site on November 13, 2017]
        or I could have not been.  I'm not sure.").

Given the host of concerns over Defendant's other documents, Defendant's challenge to the certified payroll records is unavailing.  Defendant attempts to distinguish the employee's payment versus the nature of the work performed by that employee.  *See* Resp. 6, ECF No. 27 ("The CPRs merely state what was paid to and on behalf of the employee listed in the report, not the nature of the work actually performed.").  The problem, however, is that Defendant provides the Court with no alternative basis to assess how much time Mr. Alston actually worked in his non-supervisory capacity— which he clearly did at least occasionally, *see, e.g.*, *id.* at 11–13 ("Brian Alston does from time to time perform work in the field.").  The other documents provide zero guidance due to defects discussed in the previous paragraph, and Defendant admits that no direct document exists to assess the extent of Mr. Alston's supervision during the project (so that the Court can clearly distinguish supervision from on-site work), *id.* at 9.

1   The issue is not whether Defendant had an obligation to report Mr. Alston's

2   supervisory work to Plaintiffs.  *Cf. id.* at 8.  Instead, to the extent that Mr. Alston

3   performs both supervisory duties and on-site work, Defendant should be able to present

4   credible evidence that partitions the two functions and itemizes the hours accordingly.

5   Defendant's brief presents no such evidence other than those that even Defendant

6   admitted are imprecise due to Mr. Alston's position in the corporation.

7   With no other way to assess how long Mr. Alston worked in his "inside wireman"

8   capacity, the Court must rely on the certified payroll records (which provides the most

9   credible framing of the events),[5] or conclude that no "adequate" record exists on the

10  hours Mr. Alston worked under his "employee" role, *see Brick Masons*, 839 F.2d at 1337.

11  Either way, Defendant has failed to meet its burden of persuasion—both under the *Brick*

12  *Masons* framework and the legal standard for summary judgment on a disputed issue, *see*

13  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (requiring Defendant to show

14  "specific facts" beyond the pleadings to prove a genuine factual dispute at the summary

15  judgment phase).  Therefore, there is no genuine dispute that Plaintiffs are entitled to the

16  damages resulting from Defendant under-reporting 496.5 hours of Mr. Alston's work.

17  **B.    The Auditors' Ability to Review Defendant's Records**

18  Next, the Court addresses Defendant's assertion that the auditor was at fault in the

19  initial inability to review Defendant's records.  *See* Resp. 6, 9, 14, ECF No. 27.  This is a

20  material issue that the Summary Judgment Order must address, because the Court's

21  decision on it will directly impact what Defendant owes to Plaintiffs.  That is, if the

---

[5] The fact that the secretary who prepared the certified payroll records was unaware of the nature of Mr. Alston's work, *see* Resp. 13, ECF No. 27, also does not help Defendant's cause.  Mr. Alston had the option to certify that he worked as a "Supervisor," but he chose not to.  UF No. 55, ECF No. 28.  Ultimately, Mr. Alston has certified under penalty of perjury that he was compensated as an "Inside Wireman."

1    trouble behind Alsweet's access to Defendant's payroll records was wholly Alsweet's

2    fault, the justification behind Plaintiffs' lawsuit would become more tenuous.  *See* Decl.

3    Andy Berg Ex. C, ECF No. 24-1 (compelling the employer to pay all attorney's fees and

4    audit fees if the Trust Fund "is required to file a lawsuit to enforce [the employer's]

5    obligation to comply with an audit," under Section VIII of the Collection Policy and

6    Procedures); UF No. 9, ECF No. 28 (discussing liquidated damages assessed at a greater

7    amount upon the Trust Funds filing a lawsuit).

8         But again, Defendant's brief only cites to Plaintiffs' own MSJ Memorandum, and

9    does not provide evidentiary support: (1) that "the Auditor failed to schedule a visit to

10   review My Electrician's records," Resp. 6, ECF No. 27, (2) that "The Auditor failed to

11   appear or coordinate a time for the review of the records," *id.* at 9, or (3) that "Defendant

12   made all records available to the Auditors prior to the commencement of this action and

13   the Auditor refused and/or failed to come to My Electrician's office to review the

14   records," *id.* at 14.

15        In contrast, the auditor from Alsweet has declared he received emails that twice

16   declined to provide access to Defendant's certified payroll records, which was the reason

17   he canceled the scheduled audit and declined to schedule one later.  Decl. Zachary

18   Gelbart ¶¶ 9, 11, ECF No. 24-5.  The auditor has testified why the certified payroll

19   records are essential to the audit.  *See id.* ¶ 4–5.  Therefore, it makes sense that Alsweet

20   cancelled the scheduled audits when the records essential to conduct the audit were

21   unavailable to them.  Defendant's "attempts" to coordinate an audit are hollow gestures

22   when the auditor has explained why an audit without the certified payroll records would

23   have been meaningless.

24        Accordingly, Defendant owes Plaintiffs attorney's fees, audit fees, and the 20%

25   liquidated damages since the complications relating to the audit arose from Defendant

26   denying access to the certified payroll records.  Whether Defendant ultimately cooperated

27

28

with Plaintiffs and provided the certified payroll records matters little in the Court's decision. After the lawsuit commenced, Defendant had an obligation to comply with discovery.

### C.    Plaintiffs' Entitled Award

The final issue between the parties is how much Defendant owes Plaintiffs. Specifically, Defendant challenges the amount Plaintiffs are asking in attorney's fees. Resp. 14, ECF No. 27. The Court agrees with Plaintiffs that they are entitled to $16,192.25 in damages and $4,822.44 in litigation costs. However, Plaintiffs have failed to meet their burden of proof for summary judgment on attorney's fees. Providing an itemized breakdown of each task performed by the attorneys and paralegals, in addition to an explanation on the reasonableness of the paralegals' rates, are needed for the Court to summarily determine the reasonableness of the attorney's fees.

### 1.    Damages

"Defendant does not dispute that the Auditor reached its conclusion through the means and methods described in Plaintiffs' Motion." Resp. 9, ECF No. 27. With the Court agreeing with Plaintiffs' theory of liability, *supra* Sections III.A, B, it also agrees with the auditor's damages calculations:

| | |
|---|---|
| Contributions | $6,604.70 |
| Dues | $966.31 |
| Liquidated Damages (20% of Delinquent Contributions) | $1,320.94 |
| Audit Fee | $5,250.00 |
| Interest (10% through 12/4/20) | $2,050.30 |
| **Total Amount Due** | **$16,192.25** |

Decl. Zachary Gelbart ¶ 30, ECF No. 24-5; MSJ Mem. 25, ECF No. 24. The award listed above is mandatory and not discretionary. 29 U.S.C. § 1132(g)(2) (discussing how the court "shall" award unpaid contributions, interest, liquidated damages, and "such other

1   legal or equitable relief"); *Operating Engineers Pension Tr. v. Beck Eng'g & Surveying*

2   *Co.*, 746 F.2d 557, 569 (9th Cir. 1984) (citation omitted) ("It is settled Ninth Circuit law

3   that this provision [Section 1132(g)(2)] is mandatory and not discretionary.").  Further,

4   Defendant is contractually obliged to pay such amount under the Trust Agreements.

5               **2.      Attorney's Fees and Costs**

6            Plaintiffs also seek $22,705.00 in attorney's fees, and $4,822.44 in costs expended

7   over the litigation.  MSJ Mem. 20, ECF No. 24.  Defendant describes such attorney's fees

8   as unreasonable.  Resp. 14, ECF No. 27.  Under the legal standard for a summary

9   judgment motion and for demonstrating the reasonableness of attorney's fees, the movant

10  bears the burden of proof.  However, Plaintiffs have failed to (1) provide an itemized, by-

11  the-hour description of the work performed by counsel and the paralegals; and (2) justify

12  the reasonableness of the paralegal rates.  As such, the Court finds that Plaintiffs have

13  failed to meet their initial burden.  Further, as argued by Defendant, attorney's fees

14  almost 3.5 times greater than the originally challenged contribution amount are

15  unreasonable on the record before the Court.

16           In the instant ERISA lawsuit to enforce delinquent contributions to a multi-

17  employer plan, the Court must award "reasonable attorney's fees and costs of the action,

18  to be paid by the defendant."[6]  29 U.S.C. § 1132(g)(2)(D).  Upon reviewing the litigation

19

20  ───────────────

21

22  [6] Plaintiffs imply that the Inside Agreement and the Trust Agreement may provide an
    independent basis for attorney's fees.  *See* MSJ Mem. 20, ECF No. 24.  After all, Section

23  VIII of the Collection Policy and Procedures states that if the Trust Funds are "required
    to file a lawsuit to enforce a Contributing Employer's obligation to comply with an

24  audit," the employer must pay "all" the attorney's fees and audit fees incurred, "even if
    no amounts are found due on the audit."  Decl. Andy Berg Ex. C, ECF No. 24-1.  With

25  no additional support for such claim, however, the Court declines to award attorney's
    fees on this basis.  Plaintiffs have not articulated whether such unilateral attorney's fees

26  provisions are enforceable under California law.  *Cf. Monster, LLC v. Superior Court*, 12

27

28

15

costs, *see* Decl. Tino X. Do Ex. M, ECF No. 24-4, the Court agrees that Plaintiffs are entitled to $4,822.44, as such fees were necessary to proceed with the lawsuit.

As to an attorney's fees award, its reasonableness is first determined by calculating the lodestar amount.  "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) (citation omitted), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997).  "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed."  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007) (citation omitted).

At the same time, the Court may deviate from the lodestar figure upon considering twelve guideline factors.  *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds*.  After all, the trial court's "superior understanding of the litigation" puts it in the best position to determine the reasonableness of the fees and potentially reduce the final attorney's fees awarded.  *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1047 (9th Cir. 2000).  The Court only needs to discuss the *Kerr* factors that are relevant to the Court's decision to deviate from the lodestar amount. *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1386 (9th Cir. 1990), *overruled on other grounds*.

With the above principles in mind, the Court starts with reviewing the lodestar amount presented by Plaintiffs.  Plaintiffs' counsel has provided the calculation below:
/ / /

_____

Cal. App. 5th 1214, 1225 (2017) (discussing that the purpose of California Civil Code § 1717 is "to prevent the oppressive use of one-sided attorney fee provisions").

16

1.   Attorney Fees:

| Attorney Name | Rate/Hour | Dates Worked | Billed Hours | Total Fees |
|---|---|---|---|---|
| Matthew P. Minser | $230–245 | 4/18/19 to 10/31/20 | 10.50 | $2,458.00 |
| Tino X. Do | $230–245 | 4/17/19 to 10/31/20 | 78.60 | $18,430.00 |
| **Total:** | | | 89.10 | $20,888.00 |

2.   Paralegal Fees:

| Paralegal Name | Rate/Hour | Dates Worked | Billed Hours | Total Fees |
|---|---|---|---|---|
| Nargis Shaghasi | $135 | 4/18/19 to 9/20/19 | 2.60 | $351.00 |
| Alicia Wood | $135–145 | 10/9/20 to 10/31/20 | 10.70 | $1,466.00 |
| **Total:** | | | 13.30 | $1,817.00 |

3.   **Total** from adding the attorney fees and paralegal fees: **$22,705.00**.

Decl. Tino X. Do Ex. L, ECF No. 24-4; *see also* UF No. 47, ECF No. 28.

The Court first concludes that the attorney rates billed to Plaintiffs are reasonable. In ERISA cases, "billing rates 'should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (citations omitted).  The Court finds the attorney's fees ranging from $210 to $250 per hour to be well-grounded, given that cases of similar complexity have set the attorney's fees at such rates.[7]  *Cf. Bd. of Trustees of the Boilermaker Vacation Tr. v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1228 (N.D. Cal. 2005) (finding $210 per hour in an ERISA default judgment case reasonable); *Trs. ex rel. Teamsters Benefit Tr. v. Casey's Office Moving & Servs.*, No. C-05-4157MHP (EMC), 2007 U.S. Dist. LEXIS 24722 (N.D. Cal. Mar. 30, 2007) (adopting the magistrate judge's recommendation of an hourly rate at $250 in an ERISA default judgment case).

---

[7] Given that the charged rates are reasonable, it is unnecessary to determine whether $345 and $450 per hour rates that Plaintiffs have presented in their briefs are reasonable, *see* MSJ Mem. 22, ECF No. 24.

19-cv-1500-GPC-AHG

1    However, in contrast to the hourly billing rates, the Court lacks the evidentiary

2    basis to conclude that the 89.10 attorney hours billed to Plaintiffs are reasonable.  The

3    Court understands that the hours billed spanned a period from April 17, 2019 through

4    October 31, 2020, a bit over a year and a half.  But with no breakdown of how long

5    counsel spent on each assignment, the Court cannot determine whether those hours were

6    reasonable.  For example, Plaintiffs' counsel has provided a description of work

7    performed, Decl. Tino X. Do 6–7, ECF No. 24-4, and some of the work include activities

8    such as "Intra-office conferences," or "communications with Trustees regarding

9    settlement proposal."  These are certainly core parts of a lawsuit, but the Court has no

10   way to determine if more hours on this were spent than necessary.  Plaintiffs have failed

11   to demonstrate an "essential element" in meeting its burden to justify attorney's fees, i.e.

12   the reasonableness of the hours.  *Cf. Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

13   (1986).  Indeed, a billing record that breaks down each task by the hour would be

14   necessary.  *See* MSJ Mem. 24, ECF No. 24 ("The Trust Funds are not opposed to

15   producing their billing records, if requested by the Court.").

16   The fees billed on behalf of the paralegals face the same problem.  *See id.* at 7–8

17   ("Intra-office conferences").  Further, Plaintiffs have failed to provide any briefing on

18   whether the $135 to $145 rates of the paralegals are reasonable or whether such rates

19   correspond to the market compensation.  Thus, the Court lacks the evidentiary support to

20   conclude that the $1,817.00 in paralegal fees is reasonable as well.

21   Since the Court lacks the evidentiary basis to set a reasonable lodestar amount, it

22   would be premature to consider the *Kerr* factors for any potential deviation.  *See Van*

23   *Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (discussing the

24   need to establish the lodestar amount first, because "[t]he lodestar amount is

25   presumptively the reasonable fee amount").  However, to guide the parties on any

26   potential settlement or follow-up motions, the Court observes that "(2) the novelty and

27

28

difficulty of the questions involved, . . . (8) the amount involved and the results obtained, . . . and (12) awards in similar cases" are salient factors the Court would consider in deciding a subsequent attorney's fees dispute.  *See Kerr*, 526 F.2d at 70.

Plaintiffs' explanations behind the reasonableness of the attorney's fees is not convincing, at least at the summary judgment stage.  Lawsuits take time, so the length alone (or the fact that Defendant was responsible for such protracted lawsuit) cannot establish reasonableness.

While it is true that ERISA does not require attorney's fees to be proportional to the total recovery, the fees must still be reasonable.  *Operating Engineers Pension Trusts v. B & E Backhoe, Inc.*, 911 F.2d 1347, 1355 (9th Cir. 1990).  And in determining such reasonableness, the Ninth Circuit expressly permits considering proportionality.  *Id.* at 1355–56 (discussing how the plaintiffs received reduced attorney's fees in part "because the recovery was so disproportionate to the amount sought").  On the record before the Court, there is reason to believe that attorney's fees ($22,705.00) almost 1.4 times greater than the damages award itself ($16,192.25) would be disproportionate, and therefore unreasonable.

## IV.   CONCLUSION

For reasons discussed above, the Court **GRANTS IN PART and DENIES IN PART** Plaintiffs' Motion for Summary Judgment.  Under this Order, Plaintiffs are summarily entitled to $16,192.25 in damages and $4,822.44 in litigation costs.  The Court hereby **VACATES** the hearing on this matter scheduled for January 29, 2021.

**IT IS SO ORDERED.**

Dated:  January 26, 2021

Hon. Gonzalo P. Curiel
United States District Judge

19