UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE SAN DIEGO ELECTRICAL PENSION TRUST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MY ELECTRICIAN INC., a California corporation,<br><br>Defendant. | Case No.: 19-cv-1500-GPC-AHG<br><br>**JUDGMENT AND ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>[ECF No. 32] |

Before the Court is Plaintiffs' Motion for Attorney's Fees and Costs ("Motion"), ECF No. 32, pursuant to Federal Rule of Civil Procedure 54(d).  Upon consideration of the Motion and the related papers, the Court **GRANTS** the Motion.  Plaintiffs are entitled to $31,320.00 in attorney's fees, and $1,031.87 in additional litigation costs.

I. PROCEDURAL BACKGROUND

On January 26, 2021, this Court issued a Summary Judgment Order.  ECF No. 31.  The Court generally found Defendant liable under the Employee Retirement Income

/ / /

1  Security Act of 1974 ("ERISA"), and concluded that Plaintiffs are summarily entitled to
2  $16,192.25 in damages and $4,822.44 in litigation costs.

3      At the same time, the Court denied Plaintiffs' request to summarily award
4  $22,705.00 in attorney's fees. The Court discussed how Plaintiffs must "(1) provide an
5  itemized, by-the-hour description of the work performed by counsel and the paralegals;
6  and (2) justify the reasonableness of the paralegal rates." *Id.* at 15. In addition, the Court
7  concluded that based on the record at the time, "there is reason to believe that attorney's
8  fees ($22,705.00) almost 1.4 times greater than the damages award itself ($16,192.25)
9  would be disproportionate, and therefore unreasonable." *Id.* at 19.

10     Subsequently on February 8, 2021, Plaintiffs submitted the instant Motion,
11 pursuant to Federal Rule of Civil Procedure 54(d). Plaintiffs now request $31,320.00 in
12 attorney's fees and $1,031.87 in additional litigation costs. Mot. Mem. P. & A. 1, ECF
13 No. 32. Defendant filed an Opposition, and Plaintiffs filed a Reply. ECF Nos. 36, 37.

14 **II.   DISCUSSION**

15     The Court concludes that attorney's fees amounting to $31,320.00 is appropriate.
16 The lodestar amount of $31,320.00, consisting of rates charged and the hours billed, was
17 reasonable, and the Court finds no reason to deviate from it. The Court also concludes
18 that $1,031.87 in additional litigation costs, incurred from filing the summary judgment
19 motion, is appropriate—especially when Defendant has not challenged otherwise.

20     **A.   Attorney's Fees**
21         **1.   Legal Standard**

22     Plaintiffs request attorney's fees amounting to $31,320.00 pursuant to Federal Rule
23 of Civil Procedure 54(d). This Rule "'creates a procedure but not a right to recover
24 attorneys' fees.' . . . Accordingly, 'there must be another source of authority for such an
25 award.'" *Physician's Surrogacy, Inc. v. German*, 311 F. Supp. 3d 1190, 1193 (S.D. Cal.
26 2018) (quoting *MRO Commc'ns, Inc. v. AT&T Co.*, 197 F.3d 1276, 1280–81 (9th Cir.

1999)). Here, the source is Section 502(g)(2) of ERISA. Under it, a court "shall" award "reasonable attorney's fees" to be paid by defendant if the court rules in favor of the employee welfare/pension benefit plan, where the plan's fiduciary sued the defendant for delinquent contributions to the plan. *See* 29 U.S.C. § 1132(g)(2). "[T]his provision is mandatory and not discretionary." *Operating Engineers Pension Tr. v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984). The matter in front of this Court satisfies the conditions outlined in Section 502(g)(2) of ERISA—the Court sided with Plaintiffs regarding Defendant's delinquent contributions to the trust fund. Accordingly, the Court shall award reasonable attorney's fees that Defendant must pay to Plaintiffs.

The reasonableness of the attorney's fees is first determined by calculating the lodestar amount: "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997). The Court may then deviate from this lodestar figure upon considering twelve guideline factors. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds*; *cf. Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1047 (9th Cir. 2000) (discussing how the trial court's "superior understanding of the litigation" puts it in the best position to determine the fees' reasonableness, including potentially reducing the final fees awarded).

The twelve *Kerr* guideline factors are the following:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

526 F.2d at 69–70 (citations omitted). "The failure to consider such factors constitutes an abuse of discretion." *Id.* at 70. However, the Court's Order only needs to discuss the *Kerr* factors relevant to the Court's decision to deviate from the lodestar amount; "each and every factor need not be discussed." *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1386 (9th Cir. 1990) (citation omitted), *overruled on other grounds*.

### 2.    The Lodestar Amount

The Court starts its analysis by reviewing the lodestar amount, i.e., the reasonable rates multiplied by reasonable hours. Plaintiffs have provided the following (updated) calculation:

1.    Attorney Fees:

| Attorney Name | Rate/Hour | Dates Worked | Billed Hours | Total Fees |
|---|---|---|---|---|
| Matthew P. Minser | $230–245 | 4/18/19 to 12/31/20 | 13.90 | $3,333.00 |
| Tino X. Do | $230–245 | 4/17/19 to 12/31/20 | 108.00 | $25,633.00 |
| **Total:** | | | 121.90 | $28,966.00 |

2.    Paralegal Fees:

| Paralegal Name | Rate/Hour | Dates Worked | Billed Hours | Total Fees |
|---|---|---|---|---|
| Nargis Shaghasi | $135 | 4/18/19 to 9/20/19 | 2.60 | $351.00 |
| Alicia Wood | $135–145 | 10/9/20 to 12/31/20 | 14.40 | $2,003.00 |
| **Total:** | | | 17.00 | $2,354.00 |

3.    **Total** from adding the attorney fees and paralegal fees: **$31,320.00**. Decl. Tino X. Do Ex. B, ECF No. 32-2.

Regarding the rates, the Court has concluded that the attorney rates are reasonable. Summ. J. Order 17, ECF No. 31. Defendant concurs. Opp'n 6, ECF No. 36. On the paralegal rates, Plaintiffs have now provided evidentiary support, and Defendant did not present any countervailing evidence. The Court now concludes that the paralegal rates of $135 to $145 are also reasonable, as cases of similar complexity have consistently set the reasonable rates at $150. *See, e.g., Bd. of Trs. of the Laborers Health & Welfare Tr. Fund for N. Cal. v. Breneman, Inc.*, No. 16-cv-01640-YGR, 2017 U.S. Dist. LEXIS

167436, at *16 (N.D. Cal. Oct. 10, 2017) (delinquent contribution dispute); *White v. Coblentz, Patch, Duffy & Bass LLP Long Term Disability Ins. Plan*, No. C 10-1855 BZ, 2011 U.S. Dist. LEXIS 125657, at *8 to *9 (N.D. Cal. Oct. 31, 2011) (collecting cases; ERISA disability dispute); *Kroll v. Kaiser Found. Health Plan Long Term Disability Plan*, No. C 09-01404 LB, 2011 U.S. Dist. LEXIS 126386, at *25 (N.D. Cal. Aug. 25, 2011) (same). *See generally Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (discussing how reasonable rates are established by reference to what is charged "for legal work of similar complexity").

Regarding the hours, Plaintiffs have now provided a ledger, which breaks down how long counsel (and the paralegals) spent on each task. Decl. Tino X. Do Ex. A, ECF No. 32-2. Upon a review of the ledger, the Court concludes that the hours spent on the lawsuit were reasonable, if not commendable for counsel's efficiency in handling the case. To better explain the Court's rationale on reaching its conclusion, the Court will discuss three separate phases of the lawsuit (and the hours spent in each) which Plaintiffs identified: (1) the initial intake up to the filing of the Complaint; (2) audits and alternative dispute resolutions; and (3) discovery and preparation for summary judgment.

In the first phase, Plaintiffs spent a total of 5.6 hours in eventually filing the Complaint, which the Court finds reasonable. Some of the time was devoted to internal discussions with the auditors, but this is understandable given that the audit was the source of the entire dispute. Only 1.7 hours total were spent issuing demand letters, *see id.* at 1 (entries from 4/18/19 to 5/1/19), and only 2.9 hours were spent drafting and finalizing the Complaint, *see id.* at 2–3 (entries from 7/18/19 to 8/12/19).

In the second phase, Plaintiffs spent a total of 57 hours completing the audits and participating in mandatory alternative dispute resolution proceedings. Like the first phase, no part of the record indicates that the hours spent were out of proportion. Here, the Court observes that counsel spent significant amounts of time corresponding with

opposing counsel. *See, e.g.*, *id.* at 3–9, 11–12. But none of these exchanges was frivolous or unnecessary—they were to: execute service (entry from 9/17/19), negotiate (e.g., entries from 9/12/19 and 11/25/19), file joint documents (e.g., entries from 11/12/19 and 12/2/19), and most importantly, collect documents necessary for the audits (e.g., entries from 10/1/19 to 10/22/19 and 1/30/20), which if done correctly could resolve the entire dispute. In addition, much time was spent preparing for (and participating in) requisite court proceedings, such as the case management conference, early neutral evaluation, and mediation. *See, e.g.*, *id.* at 5, 8, 11–12 (e.g., entries from 11/26/19, 2/4/20, and 3/26/20). Occasionally, there were internal communications, such as between the counsel and the client, or between the counsel and the auditors. *See, e.g.*, *id.* at 7 (e.g., entries from 1/15/20 to 1/24/20). However, none of them were of an excessive duration, many times lasting about 30 minutes.

Finally, in the third phase, Plaintiffs spent a total of 76.3 hours to pursue discovery and ultimately file its Motion for Summary Judgment. To start, Plaintiffs had to parse through hundreds of payroll records and figure out what exactly happened and what would advance their case. *See* Decl. Tino X. Do Exs. C, D, ECF No. 24-4. Thus it makes sense for Plaintiffs to devote many hours preparing the interrogatories, requests for admission, requests for production, depositions, and ultimately the summary judgment motion and related documents (including declarations and the separate statement of undisputed material facts).

And upon review of the record, Plaintiffs spent the appropriate amounts of time on each. For example, Plaintiffs spent around 20 hours for the deposition. *See* Decl. Tino X. Do Ex. A at 12–16, ECF No. 32-2 (entries from 4/30/20 to 10/8/20). These collective hours were reasonable based on the nature of the various sub-tasks: the internal strategizing of whether to depose (and whom), notifying each witness, preparation and the related document review, scheduling and logistics (especially accounting for

additional challenges of conducting the depositions remotely due to COVID-19), the actual deposition itself, and finally, quality-controlling the transcripts.

Plaintiffs also spent around 40 hours preparing their summary judgment motion, which included not just drafting the motion itself, but also drafting supporting declarations and the separate statement of undisputed material facts (as required by the Court's Chambers Rules). *See id.* at 16–19 (entries from 9/11/20 to 12/31/20). Considering that Plaintiffs submitted five declarations, each of them being important to their case,[1] the Court appreciates the relatively few hours spent on the task. The Court does observe that some entries near the end of the third phase appear duplicative. On December 3, 2020, there are two 1.9-hour entries, one submitted by the counsel and the other submitted by the paralegal, which implicate the same task. Similarly, on December 4, 2020, there are two 1.5-hour entries where the counsel is supervising the paralegal over the same task. *See id.* at 18–19. However, since these were at the final stage of Plaintiffs submitting their summary judgment motion, the counsel's oversight over the paralegal's work makes much sense. It certainly was not unreasonable.

In other parts of the third phase, Plaintiffs handled various discovery-related tasks, including requests for admission, interrogatories, and requests for production. *See, e.g.*, *id.* at 13 (entries from 6/26/20 to 6/30/20). Once again, the hours committed in these matters do not appear unreasonable. Given how difficulties existed in initially

---

[1] To illustrate, the Court referenced three of the five declarations in its Summary Judgment Order. ECF No. 31 (citing to Declarations of Andy Berg, Zachary Gelbart, and Tino X. Do). While the Court did not cite to the Declaration of Jeremy Abrams, ECF No. 24-3, preparing it was still necessary because both Mr. Berg and Mr. Abrams were the main representatives for Plaintiffs. And while the Court did not cite to the Declaration of Matthew Hash, ECF No. 24-2, this was also needed to buttress Plaintiffs' argument that Mr. Brian Alston did occasionally work in his non-supervisory capacity—in which the Court agreed.

conducting the audit, counsel had to spend the necessary hours making sure all records were obtained.

In conclusion, the lodestar amount is $31,320.00. The attorney rates of $230 to $245 are reasonable, and the paralegal rates of $135 to $145 are reasonable. In addition, the hours spent by each counsel and paralegal were reasonable, as discussed above. At its core, Defendant has failed to present any evidence challenging why the hours incurred by Plaintiffs were unreasonable. With no guideline from Defendant other than its plea that the resultant outcome is disproportionate to the underlying damages in dispute, the Court at least affirms $31,320.00 as the basis for the rest of its analysis. *See Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (discussing the need to establish the lodestar amount first, because "[t]he lodestar amount is presumptively the reasonable fee amount").

### 3. Potential Adjustments

With the lodestar amount settled, the Court next discusses if any adjustments would be appropriate based on the twelve *Kerr* factors. Upon reviewing the record, the Court now considers the following factors to be worth discussing more in-depth:

(1) the time and labor required;

(2) the novelty and difficulty of the questions involved;

(8) the amount involved and the results obtained; and

(12) awards in similar cases.

*See Kerr*, 526 F.2d at 69–70.

The Court will discuss the first two factors—time and labor required, and novelty and difficulty of the questions—together. Defendant explains how the Court should lower the attorney's fee award due to the second factor. The Court does agree that this case has no particularly novel or difficult issues. At the end of the day, the Court was deciding whether Defendant "under-reported" Mr. Brian Alston's hours. However, many

times proving a simple point takes significant record-gathering to close off any suspicions over the facts. And as the ledger now shows, that is what was needed in this case. It was Plaintiffs' burden to prove numerous material facts, *see, e.g.*, Reply 8, ECF No. 37, and to cover all their bases, Plaintiffs' efforts had to be thorough. While the Court appreciates that Defendant generally complied with Plaintiffs' discovery requests, *see* Opp'n 8, ECF No. 36, the volume of payroll records and Defendant's initial reluctance in the audits meant that the time and labor to prosecute the case was inevitably significant. So while the novelty and difficulty of the questions may not be challenging, the time and labor to get to that plain answer was necessarily substantial. These factors do not convince the Court to deviate from the lodestar amount.

Next is Defendant's main contention behind its Opposition: the disproportionality between the attorney's fees and the damages in dispute.[2] As an initial matter, ERISA does not require attorney's fees to be proportional to the total recovery. Instead, the operative standard is whether the fees are reasonable, in which proportionality is part of the consideration, *see, e.g.*, *Operating Engineers Pension Trusts v. B & E Backhoe, Inc.*, 911 F.2d 1347, 1355 (9th Cir. 1990), but not determinative. Indeed, district courts across the country have awarded attorney's fees far more disproportionate than what is in front of this Court (the lodestar amount of $31,320.00 compared to $16,192.25 in awarded damages). *See, e.g.*, *Sullivan v. Prestige Stone & Pavers Corp.*, 2020 U.S. Dist. LEXIS 56177, at *10 (S.D.N.Y. Mar. 30, 2020) (awarding $119,130.75 in attorney's fees, more

---

[2] The Court is aware that the eighth *Kerr* factor, "the amount involved and the results obtained," 526 F.2d at 70, should also compare the amount sought and the amount actually recovered. *See, e.g.*, *Motion Picture Indus. Pension Plan v. Klages Grp., Inc.*, 757 F. Supp. 1082, 1088 (C.D. Cal. 1991). In this context, Plaintiffs' case for their request is even stronger—the Court awarded the entirety of the damages sought, which points to the value of counsel's input in the matter.

than 5 times the awarded damages); *Elise Dragu v. Motion Picture Indus. Health Plan for Active Participants*, 159 F. Supp. 3d 1121, 1130 (N.D. Cal. 2016) ("That [plaintiff's] fee request is 4.75 times the damages at issue in this case is not, by itself, a reason to reduce the award of attorney's fees."); *Trs. of the Michiana Area Elec. Workers Health & Welfare Fund v. TGB Unlimited, Inc.*, No. 2:13-CV-199-JEM, 2015 U.S. Dist. LEXIS 53176, at *9 to *11 (N.D. Ind. Apr. 22, 2015) (awarding attorney's fees nearly 50 times the billed delinquency of $118.54).

In fact, it appears that even when reducing the final attorney's fees award due to the fees being out of proportion, courts have still considered attorney's fees more than twice the actual recovery to be reasonable. *See Trustees of S. California IBEW-NECA Pension Tr. Fund v. Flores*, No. 204CV10011FMCPJWX, 2008 WL 11336183, at *5 (C.D. Cal. Nov. 14, 2008) (finding a 50% downward adjustment, resulting in 2.2 times the total damages award, to be reasonable). Here, the lodestar amount of $31,320 is approximately 1.9 times the $16,192.25 awarded in damages. Thus even accounting for proportionality, the Court does not find reason to deviate from the lodestar amount.

Finally, the Court looks at awards in similar cases. Case law discussed above all lead the Court to conclude that the attorney's fees requested in the Motion is reasonable. While Defendant's Opposition brief references *Operating Engineers Pension Trusts v. B & E Backhoe, Inc.*, 911 F.2d 1347, 1355 (9th Cir. 1990), Plaintiffs are correct that in *B & E*, the court was referencing disproportionality between the amount sought and the *recovery*, not the disproportionality between the damages and attorney's fees. *See id.* at 1355–56 ("[T]he Trusts received only $12,000 in attorney's fees . . . because the recovery was so disproportionate to the amount sought, and the Trusts did not prevail on their primary legal position."). In other words, *B & E* reduced the final attorney's fees because the plaintiff recovered only a part of the damages requested, implicating the value of the attorney's labor put into the lawsuit. Such fact pattern is not applicable to the matter in

front of this Court, because as discussed *supra* note 2, Plaintiffs prevailed on the entirety of their case. The Court ascertains the counsel's value accordingly.

Thus, the Court does not find the need to adjust the lodestar amount based on the *Kerr* factors—the attorney's fees of $31,320.00 is sound. While the novelty and difficulty of the questions involved were not extraordinary, the time and labor required to address the questions were necessarily significant. Plaintiffs recovered the entirety of the damages requested, which affirms the necessity of the attorneys' time and labor in this case. And while the resultant attorney's fees may be disproportionate to the damages awarded, precedents from the district courts indicate that the degree of disproportionality in the instant case is not out of the ordinary.

### B. Litigation Costs

The Court also addresses the litigation costs, an issue that Defendant fails to contest. Plaintiffs request $1,031.87 in additional litigation costs. Mot. Mem. P. & A. 1, ECF No. 32. These additional costs consist of: (1) $445.87 in legal research for Plaintiffs' Summary Judgment Motion, and (2) $586.00 in providing copies for the Summary Judgment Motion. Decl. Tino X. Do Ex. C, ECF No. 32-2. These actions were necessary for the motion for summary judgment on which Plaintiffs largely prevailed. Therefore, the Court finds that an award of $1,031.87 in additional litigation costs is appropriate.

### III. CONCLUSION

For the reasons set out above, the Court **GRANTS** the Motion. Under this Order, Plaintiffs are entitled to $31,320.00 in attorney's fees, and $1,031.87 in additional litigation costs. The Court **VACATES** the hearing on this matter scheduled for March 19, 2021. With no other issues left for the Court to resolve, the Court **DIRECTS** the

/ / /

Clerk of the Court to close the case.

**IT IS SO ORDERED.**

Dated:  March 15, 2021

*[signature]*
Hon. Gonzalo P. Curiel
United States District Judge